125 N.J. Super. 147 (1973)
309 A.2d 281
THE STATE OF NEW JERSEY,
v.
LEONARD PETROVICH, JR., DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
Decided August 28, 1973.
*148 Mr. Peter Locascio, Assistant Deputy Public Defender, for defendant (Mr. S. David Levy, Deputy Public Defender Union Region).
Mr. Jerrold Kluger, Assistant Prosecutor, for plaintiff (Mr. Karl Asch, Union County Prosecutor; Mr. Robert D. Clarke on the brief).
KENTZ, J.S.C.
A motion to suppress evidence was filed in this case pursuant to R. 3:5-7. During the hearing on the motion defendant took the stand and testified in his behalf. After having answered several questions on cross-examination, he asserted his Fifth Amendment privilege and refused to answer a pending question and any further questions. Defense counsel then interposed an objection, contending that the question was irrelevant and that any answers given to further questions might tend to incriminate defendant. The State argued that defendant had waived his Fifth Amendment privilege by testifying and requested that the court compel the accused to answer.
The issue now before the court is whether a defendant's testimony in support of his motion to suppress evidence is admissible against him in a subsequent trial on the merits. It is well settled that one who testifies in his own *149 behalf thereby waives his Fifth Amendment privilege against self-incrimination and must answer all relevant questions asked during cross-examination. See, e.g., Brown v. Walker, 161 U.S. 591, 597-598, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Fitzpatrick v. United States, 178 U.S. 304, 314-316, 20 S.Ct. 944, 44 L.Ed. 1078 (1900); Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). Whether compelled testimony that tends to incriminate a defendant, given at a hearing on a motion to suppress evidence, may thereafter be used at a subsequent trial to possibly convict the accused, appears to be unresolved in this State.
This controversy thus involves an obvious tension between two constitutionally guaranteed rights. Must one who asserts his Fourth Amendment rights risk waiver of his Fifth Amendment privilege in order to do so? It is apparent from the outset that if an accused is forced to choose between testifying at a hearing on a motion to suppress and either remaining silent, or not contesting an alleged unlawful seizure of evidence, there will be an effective denial of one of our most precious constitutional safeguards. Such a decision would be directly contrary to the exclusionary rule as set out in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and subsequent case law. The consequence of it would be an emphatic "chilling" of the assertion of alleged marginal Fourth Amendment violations.
The Supreme Court considered this issue in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), wherein it was stated:
In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure. * * * More recently, this Court has held that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments. * * *" Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
*150 * * * It seems obvious that a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim. The likelihood of inhibition is greatest when the testimony is known to be admissible regardless of the outcome of the motion to suppress. * * *
* * * The rule adopted by the Courts below does not merely impose, upon a defendant a condition which may deter him from asserting a Fourth Amendment objection * * * it imposes a condition of the kind to which this Court has always been peculiarly sensitive. For a defendant who wishes to establish standing must do so at the risk that the words which he utters may later be used to incriminate him. Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self Incrimination Clause because the testimony was voluntary. As an abstract matter this may well be true. A defendant is "compelled" to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will forgo a benefit, and testimony is not always involuntary as a matter of law simply because it was given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the "benefit" to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case Garrett [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him on the issue of guilt unless he makes no objection. [at 389, 392-393, 88 S.Ct. at 974, 975-976]
In Simmons defendant admitted ownership of certain items of seized clothing in order to have the requisite standing to bring a motion to suppress. It was this admission of ownership that the Government then sought to utilize against Simmons at the trial on the merits. In the case at bar there is no dispute as to defendant's right to bring the action since there is ample independent evidence of his ownership of the seized articles. However, the reasoning in Simmons has application to anything that an accused says at the preliminary hearing on a motion asserting that evidence has been seized *151 unlawfully. Naturally, a defendant will not be permitted to commit perjury or to contradict his testimony at a later trial on the merits. See Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
The notion that an accused should not be placed "between the rock and the whirlpool" in choosing which of several constitutional safeguards is more precious has been expressed in many other cases, including Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In that case appellant had been advised by the Attorney General's office that if he failed to answer questions he would be removed from public office. Garrity gave an incriminating statement that was subsequently used against him at trial. The New Jersey Supreme Court upheld his conviction. On appeal to the United States Supreme Court, Garrity's conviction was reversed and the majority held that the statement in question was an involuntary one. The court, speaking through Mr. Justice Douglas, said:
The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." * * * [at 497, 87 S.Ct. at 618]
In Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), the court held that a school teacher could not be discharged merely because he had invoked the Fifth Amendment privilege against self-incrimination when questioned by a congressional committee. "The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as an equivalent either to a confession of guilt or a conclusive presumption of perjury. * * *" (At 557, 76 S.Ct. at 641)
*152 The same point has been made in challenges to parole revocations. In United States ex rel. Carioscia v. Meisner, 331 F. Supp. 635 (D.C. Ill. 1971), the court quoted from the opinion in Melson v. Sard, 131 U.S. App. D.C. 102, 402 F.2d 653 (1968), as follows:
We feel that the parolee's most significant handicap  the fear of self-incrimination can readily be eliminated. As the Supreme Court has recently recognized (in Simmons v. United States, supra) any self-incriminating statements made by an individual in order to protect his basic interests are far from voluntarily made.
In Melson v. Sard, supra, the court also stated:
* * * If a parolee is not given his full and free ability to testify on his own behalf and present his case against revocation, his right to a hearing before the Board would be meaningless. Furthermore his Fifth Amendment rights must not be conditioned "by the exaction of a price." Accordingly, we hold that any self-incriminatory statements made in a parole revocation hearing shall not be used affirmatively against the parolee in any subsequent criminal proceeding. [at 655]
It is true that reservations as to the continuing validity of the court's reasoning in the Simmons case were expressed in the majority opinion in McGautha v. California, supra. McGautha involved a challenge to the constitutionality of dealing with the issues of guilt and punishment at a single trial and also with the alleged violation of due process requirements in permitting a jury to recommend the death penalty without benefit of guidelines as to when such penalty should be imposed. Mr. Justice Harlan, writing for the majority in McGautha, stated:
The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments." * * * The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.
As has been amply demonstrated, it is my opinion that to compel an accused to choose between asserting his Fourth *153 Amendment rights and Fifth Amendment privileges is to completely undermine the requisites of fair play and due process that have been established over the years as part of our system of "ordered liberty." In addition, there are substantial questions as to the continuing validity of the majority opinion in McGautha inasmuch as the more recent case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held that the death penalty was "cruel and unusual punishment" in violation of the Eighth Amendment and hence unconstitutional as applied to the defendants before that court in the particular combination of circumstances.
Accordingly, defendant in this case is ordered to answer all relevant questions addressed to him on cross-examination regarding his testimony on the motion to suppress evidence. However, any incriminating testimony is protected by the Fifth Amendment and is not admissible as substantive evidence against defendant at a subsequent trial on the merits.