PEOPLE v ROCHA

Docket No. 77-2935. Submitted June 12, 1978, at Detroit.—Decided
October 17, 1978. Leave to appeal applied for.

Defendant, Domingo Rocha, was convicted, on his plea of guilty,
of possession of heroin and was placed on probation. During the
term of his probation he was charged with two counts of
possession of heroin with intent to deliver. Prior to trial on
these charges a probation revocation hearing was held contrary
to defendant's request for an adjournment pending disposition
of the underlying charges. Defendant refused to testify or take
part in the proceeding and was found guilty in Recorder's
Court of Detroit, Joseph A. Gillis, J., of violating his probation.
Defendant appeals. *Held:*

For reasons of public policy the testimony of a probationer at
a probation revocation hearing held prior to the disposition of
criminal charges arising out of the alleged violation of the
conditions of his probation and any evidence derived therefrom
is inadmissible against the probationer during subsequent pro-
ceedings on the related criminal charges, except for purposes of
impeachment or rebuttal where the probationer's revocation
hearing testimony or evidence derived therefrom and his testi-
mony on direct examination at the criminal proceedings are so
clearly inconsistent as to warrant the trial court's admission of
the revocation hearing testimony or its fruits in order to reveal
to the trier of fact the probability that the probationer has
committed perjury at either the trial or the revocation hearing;
the probationer must be advised before he takes the stand at
the revocation hearing that his testimony and its fruits will not

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 579.
   21 Am Jur 2d, Criminal Law § 568.
   Right to notice and hearing before revocation of suspension of
   sentence, parole, conditional pardon, or probation. 29 ALR2d
   1074.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 567, 568.
   Right to notice and hearing before revocation of suspension of
   sentence, parole, conditional pardon, or probation. 29 ALR2d
   1074.

be admissible against him at a subsequent criminal trial and failure to so advise is reversible error.

Reversed and remanded.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—PROBATION —PROBATION REVOCATION HEARINGS.

A probationer is entitled to certain due process rights at a probation revocation hearing, including the opportunity to be heard in person and to present witnesses and documentary evidence.

2. CRIMINAL LAW—PROBATION—PROBATION REVOCATION HEARINGS— EVIDENCE—MITIGATION EVIDENCE.

The evidence which a probationer may present and the trier must consider at a probation revocation hearing includes mitigating circumstances because the probation revocation process encompasses a two-step analysis: (1) a factual determination of whether the probationer violated the terms of his probation; and (2) a discretionary determination of whether the violation warrants revocation.

3. CRIMINAL LAW—PROBATION—PROBATION REVOCATION HEARINGS ALLEGING CRIMINAL OFFENSE—PROBATION REVOCATION HEARING BEFORE TRIAL—EVIDENCE—TESTIMONY OF PROBATIONER— PUBLIC POLICY.

For reasons of public policy the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation and any evidence derived therefrom is inadmissible against the probationer during subsequent proceedings on the related criminal charges, except for purposes of impeachment or rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examination at the criminal proceedings are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing; the probationer must be advised before he takes the stand at the revocation hearing that his testimony and its fruits will not be admissible against him at a subsequent criminal trial and failure to so advise is reversible error.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney.

*Markus S. Simon,* for defendant.

Before: N. J. KAUFMAN, P.J., and BEASLEY and P. R. MAHINSKE,* JJ.

N. J. KAUFMAN, P. J. On December 17, 1976, defendant pled guilty to possession of heroin, contrary to MCL 335.341(4)(a); MSA 18.1070(41)(4)(a). He was sentenced to two years probation. On April 6, 1977, defendant was charged with two counts of possession of heroin with intent to deliver, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). He pled not guilty to these new charges.

Probation violation proceedings were then instituted and a hearing held on April 22, 1977. At the hearing, defense counsel requested an adjournment pending disposition of the underlying criminal charges. The court denied this request and proceeded with the hearing. Prosecution witnesses testified as to the circumstances of the violation, but defense counsel refused to cross-examine them. Defendant refused to testify in his own behalf, specifically because he feared that any incriminating statements he might make would be used against him at a later trial.

Despite defendant's objections, the court found him guilty of probation violation and sentenced him to three to eight years in prison[1] on April 29, 1977. Defendant appeals as of right.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The trial court's increase in the maximum sentence was based on MCL 335.348; MSA 18.1070(48) which permits doubling the sentence otherwise authorized when defendant is convicted of a "second or subsequent offense" relating to drugs. Reliance on this statute was improper, because the Federal conviction occurred *after* December 17, 1976, the date of defendant's conviction on the instant charge.

At issue in this appeal is the propriety of the prosecution's timing of the probation revocation hearing prior to the trial on the underlying criminal charges. Our Court has discussed facets of this problem in three recent cases. In *People v Baines,* 82 Mich App 438; 266 NW2d 839 (1978), the Court saw the issue as whether the trial court's refusal to delay the probation revocation hearing violated defendant's Fifth Amendment right against self-incrimination. After noting that the trend of authority[2] favored holding the trial first, the Court declined to reach the substantive issue because the defendant had in fact testified at the probation revocation hearing and later pled guilty to the underlying offense. Thus, the prejudice feared was not thought to be present.

When defendant Baines appealed from his guilty plea conviction, this Court had occasion to consider another aspect of the problem. *People v Baines,* 83 Mich App 570, 573; 269 NW2d 228 (1978). Baines argued that holding the revocation hearing first created " 'unjustifiable tension' between the defendant's rights to due process and the right to be free from duress when he enters a plea". The Court rejected this argument, viewing it as essentially an attack on the process of plea bargaining

---

[2] "The American Bar Association's *Standards Relating to Probation* (Approved Draft, 1970), § 5.3 provides: 'A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge.' The commentary points out that a prior revocation hearing with its lower standard of proof and concomitantly greater incentive to present an active defense might 'compromise' the privilege against self-incrimination. *Id.,* at 63. The Model Penal Code would go further and require a conviction before probation can be revoked for that crime. Model Penal Code, § 301.3, Comment (Tent. Draft No. 2, 1954), pp 150-151. The California Supreme Court, for one, has banned the use of probation revocation hearing testimony in a later criminal trial; the court was acting in its supervisory capacity but the self-incrimination problem was the reason for the rule. *People v Coleman,* 13 Cal 3d 867; 120 Cal Rptr 384; 533 P2d 1024 (1975)." *People v Baines,* 82 Mich App at 441, fn 1; 266 NW2d 839 (1978).

itself. Judge D. E. HOLBROOK, JR., dissenting, wrote:

"Absent a rule preventing the use of a probationer's revocation hearing testimony at the subsequent trial, I believe it is fundamentally unfair to hold the revocation hearing prior to the trial on the substantive offense when the sole basis for revoking probation is a finding that the probationer committed the substantive offense. Whether or not constitutionally mandated, such a rule is necessary to prevent a chill on a probationer's exercise of his right to due process of law and his privilege against self-incrimination." 83 Mich App at 574.

We agree with the above analysis and, but for the fact that defendant Baines did take the stand at the probation revocation hearing and did not claim any violation of his constitutional rights, we would find the present case indistinguishable from *Baines.*

The third case to consider the problem of timing was *People v Nesbitt,* 86 Mich App 128; 272 NW2d 210 (1978). In that case as well, the defendants failed to preserve the issue and suffered no prejudice, because they testified at the hearing without first objecting on Fifth Amendment grounds or requesting an adjournment. The Court implied that there might be Fifth Amendment problems should the prosecutor seek to introduce the hearing testimony at a subsequent trial, but stated that the appropriate proceeding to resolve them would be the trial itself. Despite this, the Court then went on to state, in the context of reviewing a statutory argument presented by defendants, that there was "no reason" why the revocation hearing should not precede the trial. Judge RILEY, concurring in the result, wrote that this language was unnecessary to the decision and too broad in scope.

In the case at bar the situation *is* ripe for decision on the principal issue. Defendant Rocha was deterred from taking the stand at the probation revocation hearing, due to his fear that his testimony would be used in a subsequent trial on the underlying charge.

Although a probation revocation hearing is not a criminal trial, the probationer is entitled to certain due process rights at that proceeding. These rights include the "opportunity to be heard in person and to present witnesses and documentary evidence". *Morrissey v Brewer,* 408 US 471, 489; 92 S Ct 2593; 33 L Ed 2d 484 (1972), *Gagnon v Scarpelli,* 411 US 778, 786; 93 S Ct 1756; 36 L Ed 2d 656 (1973). At a probation revocation hearing, unlike a criminal trial, the evidence which the defendant may present and the trier must consider includes mitigating circumstances. This is because probation revocation encompasses a two-step analysis: 1) a factual determination of whether the defendant violated the terms of his probation, and 2) a discretionary determination of whether the violation warrants revocation. *Morrissey,* 408 US at 479–480; *Gagnon,* 411 US at 784; *People v Clements,* 72 Mich App 500, 503; 250 NW2d 100 (1976), *People v Givens,* 82 Mich App 336, 339; 266 NW2d 815 (1978). Upon a finding that the defendant has violated probation, the court still may wish to permit him to retain his conditional liberty if the circumstances of the case so warrant. *Clements, supra,* pp 504–505.

The importance of the defendant's right to present evidence in mitigation was stressed by the California Supreme Court in *People v Coleman,* 13 Cal 3d 867, 874; 120 Cal Rptr 384; 533 P2d 1024 (1975):

"A probationer is by definition a convicted law-

breaker. Insofar as a probationer seeks at a revocation hearing to deny or contradict the evidence of a probation violation, he is generally at a disadvantage in terms of the credibility of his testimony. His testimony is likely to be more readily accepted, and hence more useful to the court, insofar as it adds to rather than detracts from the factual picture presented by the state, through the probationer's explanation of his actions and account of the circumstances surrounding an alleged probation violation. *But such mitigating evidence is just what is most likely to be withheld from the court by virtue of the probationer's fear of self-incrimination,* since mitigating evidence often involves damaging factual admissions coupled with more or less compelling moral excuses." (Emphasis added.)

The *Coleman* Court held that the prosecutor must either grant use and derivative use immunity for defendant's probation revocation hearing testimony, or else hold the violation hearing after the trial on the underlying charge. Rhode Island's Supreme Court has reached the same result. *State v DeLomba,* 370 A2d 1273 (RI, 1977). Both Courts were concerned with possible prosecutorial misuse of a fair government-individual balance. As stated in *Coleman:*

"Indeed, to the extent that the object of the prosecution is simply to secure the probationer's incarceration, whether by revocation of probation or by conviction and sentencing for the new offense, the prosecution's instigation of a pretrial probation revocation hearing currently puts it in a 'tails we win, heads you lose' position vis-a-vis the probationer. Because of the inapplicability of certain evidentiary rules and the lower standard of proof obtaining at a probation revocation hearing, the People are generally more likely to achieve a probationer's incarceration through the probation revocation process than through the new prosecution and conviction. When a probationer is deterred from testifying at his revocation hearing by fears of self-incrimination at

his subsequent trial, the People's chances of securing his incarceration through the revocation proceeding are further enhanced. And if a probationer does successfully fight revocation by testifying at the hearing, the People's chances of securing his conviction of a new offense will have been improved by the probationer's having been forced, in effect, to be one of the prosecution's principal witnesses in its case in chief at his trial." *Coleman, supra,* 13 Cal 3d at 876–878. (Footnotes omitted.)

The present procedure forces upon the probationer a choice which he should not, in the interests of fairness, be required to make. The issue is whether forcing the defendant at a revocation hearing to choose between either testifying and incriminating himself later at trial, or else remaining silent and surrendering a valuable defense, constitutes an impermissible penalty for the exercise of the privilege against self-incrimination. We are certain that to place the defendant in such a dilemma is inconsistent with our notions of substantial justice, but we are not certain that our result is constitutionally-compelled. The United States Supreme Court has not passed upon this precise issue, and lower court cases have reached varying results. In *Flint v Mullen,* 499 F2d 100 (CA 1, 1974), *cert den,* 419 US 1026; 95 S Ct 505; 42 L Ed 2d 301 (1974), the Court held that the prosecution need not hold the trial first and need not grant immunity for testimony given at the probation revocation hearing. This result has received criticism from commentators who see the choice forced upon defendant as unconstitutional. Note, 21 Wayne L Rev 1127 (1975); Case Comment, 55 Boston U L Rev 847 (1975). In *Melson v Sard,* 131 US App DC 102; 402 F2d 653, 655 (1968), the Court apparently agreed, in the context of parole revocation hearings:

"If a parolee is not given the full and free ability to testify in his own behalf and present his case against revocation, his right to a hearing before the Board would be meaningless. Furthermore, his Fifth Amendment rights must not be conditioned 'by the exaction of a price.' Accordingly, we hold that any self-incriminatory statements made in a parole revocation hearing shall not be used affirmatively against the parolee in any subsequent criminal proceeding." (Footnotes omitted.)

Several state courts which have considered the problem have found no constitutional violation in timing the probation revocation hearing prior to the trial. See Anno: *Comment Note.—Procedural Requirements, Under Federal Constitution, Applicable to Revocation of Probation or Parole,* 36 L Ed 2d 1077, § 18; *People v Baines,* 83 Mich App at 575–576 (D. E. HOLBROOK, JR., J., dissenting). As noted above, California and Rhode Island have formulated rules of immunity; however, the rules were based on public policy and not constitutional grounds.

A review of United States Supreme Court cases discloses no clear answer. See Note, 74 Mich L Rev 525 (1976). In one line of decisions, the Court has condemned the imposition of penalties for the exercise of the privilege against self-incrimination. In the first of these, *Garrity v New Jersey,* 385 US 493, 497–498; 87 S Ct 616; 17 L Ed 2d 562 (1967), police officers being investigated for ticket-fixing were given a "choice" between furnishing possibly incriminatory answers at a hearing, or else losing their jobs for remaining silent. The Court held that any statements thus elicited were involuntarily made and therefore inadmissible in subsequent criminal proceedings. In a companion case, *Spevack v Klein,* 385 US 511, 515; 87 S Ct 625; 17 L Ed 2d 574 (1967), the Court disallowed the disbar-

ment of an attorney for failure to furnish incriminating records, stating, "In this context, 'penalty' is not restricted to fine or imprisonment. It means * * * the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'."

The reasoning of *Garrity* and *Spevack* was followed in later cases involving dismissal of governmental employees following their refusal to testify or waive immunity at hearings investigating alleged criminal conduct. *Gardner v Broderick,* 392 US 273; 88 S Ct 1913; 20 L Ed 2d 1082 (1968); *Uniformed Sanitation Men Ass'n v Comm'r of Sanitation,* 392 US 280; 88 S Ct 1917; 20 L Ed 2d 1089 (1968). Finally, in *Lefkowitz v Turley,* 414 US 70, 85; 94 S Ct 316; 38 L Ed 2d 274 (1973), the Court held unconstitutional the withholding of public contracts from a contractor who refused to waive the Fifth Amendment privilege before a grand jury:

" '[T]he State must recognize what our cases hold: that answers elicited upon the threat of the loss of employment are compelled and inadmissible in evidence. Hence, if answers are to be required in such circumstances States must offer to the witness whatever immunity is required to supplant the privileges and may not insist that the employee or contractor waive such immunity.' "

In all of the above cases, the "penalty" for remaining silent was the certain loss of a tangible benefit—a job, a contract, or the right to practice law. A different type of penalty was considered in *Simmons v United States,* 390 US 377, 394; 88 S Ct 967; 19 L Ed 2d 1247 (1968),—the surrender of another constitutional right. The *Simmons* Court held that testimony given in support of a motion

to suppress evidence was inadmissible in a subsequent trial on the issue of guilt, finding it "intolerable that one constitutional right should have to be surrendered in order to assert another".

In the case at bar, the probationer's dilemma at the revocation hearing could be likened to those faced by the defendants in *Simmons, Garrity,* and other cases involving a penalty for the exercise of Fifth Amendment rights. However, the choice-of-rights reasoning utilized in *Simmons* was declared "open to question" in *McGautha v California,* 402 US 183, 212–213; 91 S Ct 1454; 28 L Ed 2d 711 (1971). *McGautha* involved a challenge to the state's procedure whereby both guilt and punishment in a capital case were determined by the jury in a single proceeding. Defendant argued that he had been forced to give up his right to remain silent on the issue of guilt in order to exercise his due process right to address his sentencer (allocution). The *McGautha* Court agreed that this was a difficult choice, but found no constitutional violation:

"Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshhold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." 402 US at 213.

The Court answered the above question in the negative, stating that the choice was no worse than that always present in every criminal case where after hearing the state's evidence the defendant must decide whether to take the stand.

*McGautha's* precedential value appears to have been limited by the decision in *Brooks v Tennes-*

*see,* 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972), where the Court struck down a statute requiring the defendant to testify, if at all, before any other defense witnesses testified. The Court pointed out that a defendant may not be able to tell if his testimony will be helpful until he has seen how his other witnesses stand up under examination. Tennessee's procedure did not allow a defendant to make his choice of whether to testify in the "unfettered exercise of his own will"; it cut down on the privilege to remain silent "by making its assertion costly". 406 US at 610-611, quoting *Griffin v California,* 380 US 609, 614; 85 S Ct 1229; 14 L Ed 2d 106 (1965).

No standard emerges from the above cases for determining when a restricted choice between constitutional rights is itself unconstitutional, and when it is merely a difficult tactical decision. The only distinguishing feature appears to be the nature of the state's burden required to effectuate the defendant's claim. In *McGautha,* the defendant in effect requested that the traditional form of trial used in several states be abolished and replaced by an entirely different procedure. In *Simmons* and *Brooks,* however, no radical departure from legal tradition and no improper exercise of rulemaking power by the Court was necessary. Our case is more similar to *Simmons* and *Brooks* in this respect. There already exists a bifurcated procedure for determining probation revocation and guilt on the underlying charge, and all that is necessary to alleviate the burden on defendant's constitutional rights is a grant of immunity for testimony which should be inadmissible anyway under the *Garrity* rationale. Thus, the present case could be distinguished from *McGautha* on its facts.

Alternatively, were we to apply the *McGautha* standard, we could find that compelling the election between constitutional rights in this case does impair to an appreciable extent the policies behind the rights involved. See our discussion of *Coleman, supra.*

However, the viability of either of these approaches is questionable, due to the recent decision in *Baxter v Palmigiano,* 425 US 308; 96 S Ct 1551; 47 L Ed 2d 810 (1976). In *Baxter* a prison inmate at a disciplinary hearing was informed that he had the right to remain silent, but that his silence would be used against him. No criminal proceedings were then pending on the violation which was the subject of the hearing. The Supreme Court first held that use immunity would be required in a later criminal trial:

"Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'" 425 US at 316, quoting *Lefkowitz, supra,* 414 US at 85.

The *Baxter* Court saw no violation of the above principle or the principle of *Griffin v California, supra,* forbidding the use of a defendant's silence against him, in the state's procedure. The Court stated:

"The Rhode Island prison rules do not transgress the foregoing principles. No criminal proceedings are or were pending against Palmigiano. The State has not, contrary to *Griffin,* sought to make evidentiary use of his silence at the disciplinary hearing in any criminal proceeding. Neither has Rhode Island insisted or asked

that Palmigiano waive his Fifth Amendment privilege. * * * [T]his case is very different from the circumstances before the Court in the *Garrity-Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case." 425 US at 317, 318.

Justice Brennan, joined by Justice Marshall, dissenting, wrote that the penalty imposed—30 days in punitive segregation—made the assertion of the privilege more costly. "On the whole, the record inspires little confidence that [defendant's] silence was not the sole basis for the disciplinary conviction." 425 US at 332, fn 6. Justice Brennan thought the case indistinguishable from *Garrity* and *Lefkowitz:*

"The compulsion upon Palmigiano is as obvious as the compulsion upon the individuals in *Garrity-Lefkowitz.* He was told that criminal charges might be brought against him. He was also told that anything he said in the disciplinary hearing could be used against him in a criminal proceeding. Thus, the possibility of self-incrimination was just as real and the threat of a penalty just as coercive." (Footnote omitted.) 425 US at 333.

Finally, Justice Brennan saw in the majority's decision a violation of "one of the fundamental purposes of the Fifth Amendment: to preserve our adversary system of criminal justice by preventing *the government* from circumventing that system

by abusing its powers". (Emphasis in original.) *Id.* at 334. There was nothing to indicate that the disciplinary proceeding was not used as a discovery device for later criminal prosecutions; a grant of immunity *at trial* would be of no value to an uncounselled inmate who *at the hearing* did not know that such immunity would be forthcoming.

The *Baxter* decision, like the First Circuit's decision in *Flint v Mullen, supra,* has received much criticism. See Note, 29 Baylor L Rev 620 (1977); Note, 55 North Carolina L Rev 254 (1977); Comment, 1976 Utah L Rev 572 (1976). It has also been applied in a situation where criminal proceedings *were* pending against the inmate. *Roberts v Taylor,* 540 F2d 540 (CA 1, 1976), *cert den,* 429 US 1076; 97 S Ct 819; 50 L Ed 2d 796 (1977). The *Roberts* Court, viewing the "critical factor" in *Baxter* to be the fact that remaining silent did not automatically result in a finding of guilt, held that the failure to grant immunity at the hearing did not invalidate the disciplinary conviction. Defendant Roberts, like defendant Rocha, had specifically refused to testify at the hearing for fear that his testimony would be used against him at trial. See also, *Tinch v Henderson,* 430 F Supp 964 (D Tenn, 1977); *Morale v Grigel,* 422 F Supp 988 (D NH, 1976).

The impact of *Baxter* on the case at bar is unclear. On the one hand, *Baxter* could be distinguished because it involved a prison disciplinary hearing at which even the minimum due process rights of *Morrissey* and *Gagnon, supra,* do not apply. *Wolff v McDonnell,* 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974). This difference can, of course, cut both ways: it could be said that the relative absence of rights at the prison hearing makes the defendant's testimony even more impor-

tant there than it is at a probation revocation hearing. See *Coleman, supra,* 13 Cal 3d at 883-884.

Furthermore, the reasoning employed by the *Baxter* Court may indicate that a prison-probation hearing distinction is unwise. In both contexts, the final determination cannot be made upon the basis of the accused's silence alone, and the "penalty" for assertion of the Fifth Amendment privilege is not the certain loss of a tangible benefit as in *Lefkowitz* and *Garrity.* This Court views the penalty of loss of liberty as more onerous than that of prison discipline, and as much more onerous than that of the loss of a job or a contract, see *Flint v Mullen,* 372 F Supp 213, 219 (D RI, 1973), but we are uncertain that *Baxter* leaves room for such a distinction. Justice Brennan's dissent in *Baxter* focused upon the same points which we do here: the importance of the defendant's testimony at the hearing and the policy of maintaining a fair state-individual balance. These were factors which the *Baxter* majority apparently found insufficient to invalidate the disciplinary conviction.

For these reasons, we are constrained to base our holding upon public policy rather than constitutional grounds. We adopt the holding of the California Supreme Court in *People v Coleman, supra,* 13 Cal 3d at 889:

"We accordingly declare as a judicial rule of evidence that henceforth upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for purposes of impeachment or rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examina-

tion at the criminal proceedings are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing."

This rule will eliminate the possibility of illegitimate use of a probation revocation hearing as a discovery device, but will at the same time foster the interests of both the state and the defendant in a prompt, full and truthful disclosure of evidence at the hearing. *Coleman, supra; DeLomba, supra,* p 1276. We see no prejudice to the prosecution stemming from such a rule.

We also hold, in recognition of the concerns expressed by Justice Brennan in *Baxter, supra,* that the probationer must be advised before he takes the stand at the revocation hearing that his testimony and its fruits will not be admissible against him at a subsequent criminal trial on the underlying offense. As this was not done in the present case, we must reverse.

Defendant's conviction for probation violation is reversed and the cause is remanded for further proceedings consistent with this opinion.