**George W. MELSON, Appellant,**

v.

**Thomas R. SARD et al., Appellees.**

**No. 22105.**

United States Court of Appeals
District of Columbia Circuit.

Argued Aug. 15, 1968.

Decided Sept. 13, 1968.

Mrs. Barbara Allen Bowman, Washington, D. C., argued the motion for appellant.

Mr. Carl S. Rauh, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the opposition to the motion, argued for appellees. Mr. Nathan Dodell, Asst. U. S. Atty., also entered an appearance for appellees.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

This appeal contests the granting of a summary judgment in favor of the appellees, members of the District of Columbia Board of Parole. At issue is the Parole Board's ability, upon the return of a criminal indictment against a parolee, to promptly execute a parole-violator warrant and conduct a revocation hearing, thus requiring the parolee to present some or all of his case in this administrative proceeding prior to his day in court on his criminal charges.[1] Subject to the limitations indicated below, we affirm the District Court's rul-

---

1. This issue was recently brought to this court's attention in Boxley v. Rodgers, 129 U.S.App.D.C. 408, 395 F.2d 631 (1968), but was mooted due to the entry of a guilty plea by the parolee. See generally Note, *Parole Revocation in the Federal System*, 56 GEO.L.J. 705, 712–14, 729–31 (1968).

ing that the Parole Board has authority to retake a parolee upon his indictment for another crime and is not precluded from considering the new criminal charges at its parole revocation hearing.[2]

In December 1963 appellant was convicted of robbery; he was later sentenced under the Federal Youth Corrections Act. 18 U.S.C. § 5010(b) (1964). In May 1965, after sixteen months of imprisonment, he was released on parole. On January 9, 1968, while still on parole, appellant was again arrested and subsequently indicted for felony murder, second-degree murder, and the robbery of the victim's wrist watch. On February 1, 1968, a parole-violator warrant was issued by the Parole Board, specifying that appellant had been charged with the murder counts and an alleged earlier violation.[3] Soon thereafter, on February 9, 1968, a District Court judge placed appellant on work release pending trial of the murder charge. The parole-violator warrant was then executed by the Board on March 25, 1968; but at appellant's request, the revocation hearing was stayed pending the outcome of this judicial challenge.

In his petition for declaratory and injunctive relief appellant contends that he will be denied due process of law if a revocation hearing is held prior to his trial on the murder charges. More specifically, he asserts that his Fifth Amendment freedom from self-incrimination will be violated if he is forced to face the dilemma of whether to testify at the revocation hearing and seek his release, but risk uttering incriminatory statements that could be used against him at his criminal trial. On the other hand, if he remains silent, he will not fully be able to defend against revocation. Appellant further contends that having to defend against the criminal charges at the revocation hearing will force him to disclose his trial tactics in advance, thus weakening his defense.

Although we fully recognize appellant's dilemma, we are unconvinced that its resolution should be achieved by postponing the revocation hearing. We have recently emphasized the importance of a "prompt hearing where the alleged violator can contest the fact of violation and adduce whatever witnesses or evidence he may have to support his claim of innocence." Boswell v. United States Bd. of Parole, 128 U.S.App.D.C. 311, 315, 317, 388 F.2d 567, 571, 573 (1967). Delaying this hearing could disadvantage the parolee by precluding the possibility that the remainder of his interrupted sentence may be served concurrently with the sentence possibly to be imposed upon a new conviction.[4] Any imposition of a delay upon the Board's willingness to hold a prompt hearing would deprive the parolee of this benefit. The postponement of the hearing would further disadvantage a parolee's ability to present his case "while the information is likely to be fresh and the sources available." See Hyser v. Reed, 115 U.S.App.D.C. 254, 272–273, 318 F.2d 225, 243–244 (en banc), cert. denied sub nom. Jamison v. Chappell, 375 U.S. 957, 85 S.Ct. 447, 11 L.Ed.2d 316 (1963). This potential for prejudice would best be avoided. See

2. The District Court also held that appellant's request for declaratory and injunctive relief was premature. We disagree. The restrictive alternatives which appellant faces at his future revocation hearing are sufficiently concrete and involve adequate adverse interests to create an "actual controversy" within the meaning of 28 U.S.C. § 2201 (1964). See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

3. While on parole in December 1967, appellant was arrested for possessing a prohibited weapon. This arrest did not trigger a parole-violator warrant, however, and on February 6, 1968 the charge was dismissed for want of prosecution.

4. Until a warrant is executed and a revocation hearing held, no determination would have been made that the parolee must continue serving his original sentence. Absent such a determination, the sentencing judge on any new conviction would not be fully aware of the possibility that the new sentence and the remainder of the old sentence could be served concurrently.

Boswell v. United States Bd. of Parole, *supra.*

We think the solution lies in establishing certain safeguards by which the parolee's dilemma is lessened at the revocation hearing. We feel that the parolee's most significant handicap—the fear of self-incrimination—can readily be eliminated. As the Supreme Court has most recently recognized,[5] any self-incriminatory statements made by an individual in order to protect his basic interests are far from voluntarily made. In Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Court recognized that, where an individual was given "a choice between the rock and the whirlpool"[6] by having to forego his right against self-incrimination in order to avoid forfeiture of public office, the resulting statements would represent a "form of compulsion"[7] in violation of the Fifth Amendment and therefore inadmissible at trial as "voluntary" admissions. Similarly, in Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court held that incriminatory statements made at a pretrial suppression hearing may not be introduced against a defendant at trial on the issue of guilt.[8]

The same interests are at work here. If a parolee is not given the full and free ability to testify in his own behalf and present his case against revocation, his right to a hearing before the Board[9] would be meaningless. Furthermore, his Fifth Amendment rights must not be conditioned "by the exaction of a price."[10] Accordingly, we hold that any self-incriminatory statements made in a parole revocation hearing shall not be used affirmatively against the parolee in any subsequent criminal proceeding.

We decline, however, to grant relief from appellant's second objection—that a pretrial hearing will force him to tip his hand in advance of trial and consequently reveal a portion of his defense strategy. Although appellant may necessarily have to divulge a part of his defense, this is offset by his ability to learn much of the Government's case against him. Certainly there is enough merit in the achievement of greater mutual pretrial discovery in criminal cases[11] that we cannot condemn such a consequence as one which the court must resolutely forbid.

The District Court's view of the propriety of pretrial revocation hearings is therefore affirmed and the Parole Board may proceed with its hearing.

5. *See* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

6. Frost Trucking Co. v. Railroad Comm., 271 U.S. 583, 593, 46 S.Ct. 605, 70 L.Ed. 1101 (1926).

7. Garrity v. State of New Jersey, *supra* Note 5, 385 U.S. at 497, 87 S.Ct. 616.

8. *See also* Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967).

9. D.C.Code § 24–206 (1967) provides appellant with "an opportunity to appear before the Board," at which time the board may "terminate the parole or modify the terms and conditions thereof." In responding to the Board's evidence, which surely must be more than merely the indictment alone, appellant will have an opportunity to refute the allegations that

he was guilty of a parole violation. He will also be able to contend, even if he is *found to have violated parole, that his parolee status should nevertheless continue. See* Boswell v. United States Bd. of Parole, 128 U.S.App.D.C. 311, 315, 388 F.2d 567, 571 (1967); Brown v. Taylor, 287 F.2d 334 (10th Cir.), *cert. denied,* 366 U.S. 970, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961). In this latter dispositional stage, the Board may choose to rest its decision on the District Judge's release of appellant which, in a capital case, entails a finding that appellant does not pose a danger to the public.

10. Garrity v. State of New Jersey, *supra* Note 5, 385 U.S. at 500, 87 S.Ct. at 620.

11. In addition to the draftsmen of the new discovery rules, FED.R.CIV.P. 16 & 17, others have similarly shared this view. *See, e. g.,* Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth?,* 1963 WASH.U.L.Q. 279.