**Charles Eugene TINCH**

v.

**C. Murray HENDERSON, Commissioner of Corrections, et al.**

**No. 76–372–NA–CV.**

United States District Court, M. D. Tennessee, Nashville Division.

March 22, 1977.

Charles E. Tinch pro se.

Brooks McLemore, Jr., Atty. Gen., State of Tenn., Nashville, Tenn., for defendants.

### MEMORANDUM

MORTON, District Judge.

On May 16, 1976, at approximately 5:30 P.M., plaintiff, an inmate at the Turney Center, was charged with possession of contraband (drugs). The charge was reduced to writing at that time, signed by the correctional officer who observed the alleged offense, and countersigned by the Senior Operations Officer on duty. The written charge was not countersigned by the warden or acting deputy warden at any time prior to plaintiff's disciplinary hearing. Plaintiff was then placed in segregation pending a hearing before the Disciplinary Board.[1]

On May 18, 1976, a hearing was held before the Disciplinary Board. Plaintiff, who was represented at the Board hearing by a resident advisor, pleaded guilty to the possession charge. Prior to entering his plea, plaintiff was not informed that he had a right to remain silent, that he was entitled to counsel other than the resident advisor who was furnished to him, or that anything he said at the disciplinary hearing could be used against him in a subsequent prosecution. The Disciplinary Board recommended that three months good and honor time be taken from plaintiff and that he be transferred to another institution. Plaintiff was placed in administrative segregation pending transfer to another institution at 1:30 P.M. on May 18. The warden countersigned that written action at 2:45 P.M. that same day. Plaintiff was subsequently transferred to the Tennessee State Prison in Nashville.

No criminal proceedings have been initiated against the plaintiff as a result of the disciplinary report or the facts giving rise to that report. Plaintiff has a probationary parole date of May 26, 1977, and an expiration date of November 26, 1977.

Plaintiff contends that the disciplinary procedures involved in this case were deficient in two respects. He first alleges that the defendants failed to comply with this court's Order in *Crafton v. Luttrell*, 378 F.Supp. 521 (M.D.Tenn.1974), by failing to have the written charge placing plaintiff in segregation prior to his hearing before the Disciplinary Board countersigned by the warden or acting deputy warden.[2] Plain-

---

1. There is some dispute as to whether plaintiff was placed in administrative segregation or punitive segregation prior to his hearing. For the purposes of this opinion, it is not necessary to determine what type of segregation plaintiff was being held in. The fact that plaintiff was being held in segregation is sufficient.

2. The pertinent portion of the Order in *Crafton* in issue in this case is as follows:

   The defendants, their agents, and all others acting in concert with them are hereby permanently enjoined from the practice of allowing inmates to be placed in segregation

tiff's second claim is that he was forced to plead guilty because he was not give his *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

The defendants have filed a motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The defendants assert that they have complied with the requirements of *Crafton,* and that plaintiff was not entitled to be given his *Miranda* warnings prior to his hearing. There being no genuine issue as to any material fact, the court will proceed to rule on the merits of defendant's motion.

█ Turning first to plaintiff's *Crafton* claim, the court finds that the requirements of *Crafton* were not strictly adhered to by the defendants. At the time plaintiff was first placed in segregation, he had not been found guilty of the possession charge. Rather, at that time plaintiff was merely suspected of having violated the prison rules against possession of contraband. Thus, when it became clear that plaintiff was going to be held in segregation for more than eighteen hours, it was incumbent upon the warden or acting deputy warden to countersign the charge and certify that probable cause existed to believe that plaintiff was guilty of the rules violation. Their failure to do so was error.

Given that error was committed, the court finds that the error committed was not of such a nature as to warrant expunge-

ment of the disciplinary report from plaintiff's record or any other relief that plaintiff requests. The requirements of *Crafton* were substantially complied with by the prison officials. Plaintiff was given a prompt hearing before the Disciplinary Board. He was accorded the services of a resident advisor to assist him at that hearing. When he was placed in administrative segregation pending transfer to another institution, the order placing him there was quickly countersigned by the warden. Thus, on the basis of the record before it, the court concludes that there was no willful violation of this court's Order, and that the error did not so taint the proceedings before the Board as to make the proceedings fundamentally unfair. *See Wells v. Hoffmann,* No. 76–244–NA–CV (M.D.Tenn., filed January 27, 1977). However, the defendants would be well advised to see that such violations do not occur in the future.

█ Plaintiff's second claim involves questions which this court has previously considered, but not decided. In *Crafton v. Luttrell, supra,* the court said that prison officials should give an inmate his *Miranda* warnings at the onset of prison disciplinary proceedings, but refused to require that such action be taken.[3] Based on the Supreme Court's recent decisions in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the court now holds that an inmate need not be given his *Miranda* warnings when disciplinary proceedings are begun against him.

for several days by a prison guard for investigation or upon suspicion of a rules violation without being given specific written notice of the charges, countersigned by the Operations Officer then on duty. No inmate may be retained in isolation for investigation or suspicion of rules violation longer than eighteen hours without this written charge being countersigned by the warden or acting deputy warden, certifying that, in his opinion, probable cause exists to suspect the charged inmate with said rules violation.
378 F.Supp. at 542

3. The court said:
 Other than to point out that these problems exist, in the posture of this case the court

does not reach either the question of whether prisoners charged with disciplinary offenses also punishable as crimes must be afforded counsel during prison proceedings, or the question of to what extent the Fifth Amendment forbids subsequent use in a criminal prosecution of statements made by a prisoner in his own behalf before a prison disciplinary tribunal. The court will only say that in disciplinary proceedings of this nature, prison officials should inform the prisoner of his right to remain silent, and that anything he says may be used as evidence against him in a subsequent criminal prosecution arising out of the same offense.
378 F.Supp. at 539

*Baxter* involved two cases, one from the First Circuit and one from the Ninth. In *Palmigiano v. Baxter,* 510 F.2d 534 (1st Cir. 1974), the court was dealing with one of its earlier opinions that the Supreme Court had vacated and remanded for reconsideration in light of *Wolff v. McDonnell, supra. Palmigiano v. Baxter,* 487 F.2d 1280 (1st Cir. 1973), *vacated,* 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974). On remand, and upon consideration of the Supreme Court's opinion in *Wolff,* the court held that an inmate at a prison disciplinary hearing must be advised of his right to remain silent, that he must not be questioned once he exercises that right, and that his silence may not be used against him at that time or in any future proceedings.[4]

> We reiterate that the Fifth Amendment privilege against self-incrimination extends to an incarcerated suspect, whether or not interrogation is intended to obtain evidence for further prosecution, *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). An inmate subjected to such interrogation is entitled to be advised of his right to remain silent, and cannot be further interrogated should he choose not to speak. His silence may not be used against him at that time or in future proceedings. *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *see Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).
>
> 510 F.2d at 536–37

The court further held that an inmate had no right to have retained counsel present at a disciplinary hearing, but said that

> in cases where criminal charges are a realistic possibility, prison authorities should consider whether defense counsel, if requested, should not be let into the disciplinary proceedings, not because *Wolff* requires it in that proceeding, but because *Miranda* requires it in light of future criminal prosecution.
>
> *Id.* at 537

In *Clutchette v. Procunier,* 497 F.2d 809 (9th Cir. 1974), the court held, among other things, that a prisoner "must be afforded counsel (and not merely counsel-substitute) when he is required to appear before a prison disciplinary committee for violation of a prison rule which may also be punishable by state authorities." *Id.* at 822–23. The court further held:

> Adequate protection [of the inmate's privilege against self-incrimination] is provided either by postponing disciplinary action until after criminal proceedings have been completed by the courts or by providing the accused inmate with an attorney and advising him of his right to silence pursuant to the requirements of *Miranda v. Arizona, supra.*[5]
>
> 497 F.2d at 823 (footnotes omitted)

In part, the court based its decision on the Supreme Court's holding in *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).[6] *Id.* at 823. On rehear-

4. The inmate in *Baxter* had been informed that he had the right to remain silent, but that his silence could be used against him by the Disciplinary Board in arriving at its decision. The issue of whether an adverse inference could be drawn from the exercise of this right was one of the chief questions before the Supreme Court.

5. The inmates in *Clutchette* were given the "standard" *Miranda* warnings by the prison authorities, but were told that the right to counsel attached only when they were questioned by the district attorney. *Id.* at 823.

6. *Mathis* involved the conviction of a defendant for knowingly filing false claims for federal income tax refunds. The conviction rested in part on evidence consisting of incriminating oral statements obtained from Mathis by an Internal Revenue Service agent prior to the beginning of a criminal investigation against him, but while he was incarcerated serving a state sentence. The Supreme Court reversed Mathis' conviction because he had not been given his *Miranda* warnings prior to his interrogation. The Court held that the interrogation of an incarcerated suspect, whether or not intended to obtain evidence for a criminal prosecution or related to the offense for which the inmate is incarcerated, is custodial within the meaning of *Miranda v. Arizona, supra,* and thus the inmate must be advised of his right to remain silent and that he is entitled to have an

ing, which was granted to assess the impact of *Wolff* on the court's prior holding, the court reaffirmed its prior decision as to the right to counsel in disciplinary proceedings involving infractions also punishable by state authorities. *Clutchette v. Procunier*, 510 F.2d 613, 616 (9th Cir. 1975).

On appeal, the Supreme Court reversed in each case. Addressing the right to counsel issue first, the Court held that neither *Miranda v. Arizona, supra,* nor *Mathis v. United States, supra,* had any substantial bearing on the issue of whether counsel must be provided at prison disciplinary hearings which are not part of a criminal prosecution. "The Court has never held, and we decline to do so now, that the requirements of those cases must be met to render pretrial statements admissible in other than criminal cases." *Baxter v. Palmigiano, supra* 425 U.S. at 315, 96 S.Ct. at 1556. The Court then reaffirmed its decision in *Wolff* that inmates do not "have a right to either retained or appointed counsel in disciplinary hearings," and concluded that the state authorities "were not in error in failing to advise Palmigiano to the contrary, *i. e.,* that he was entitled to counsel at the hearing and that the State would furnish counsel if he did not have one of his own." *Id.* at 315, 96 S.Ct. at 1556; *see Wolff v. McDonnell, supra* 418 U.S. at 570, 94 S.Ct. 2963.

The Court then addressed the Fifth Amendment question raised by *Palmigiano v. Baxter, supra.* The Court held that permitting an adverse inference to be drawn from an inmate's silence at a disciplinary proceeding was not an invalid practice under certain circumstances. The Court held that since the prison disciplinary proceedings involved in *Palmigiano* were civil proceedings not criminal, that since the prisoner's silence was just one factor considered by the Disciplinary Board and did not automatically result in his being found guilty of the rules infraction, that since the State did not require the inmate to waive his Fifth Amendment privileges, and since the State

had not sought to make evidentiary use of the inmate's silence at any criminal proceedings, the inmate's Fifth Amendment privileges were not violated.

> This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege. The advice given inmates by the decisionmakers is merely a realistic reflection of the evidentiary significance of the choice to remain silent. 425 U.S. at 318, 96 S.Ct. at 1557

The court further held that had an inmate been compelled to furnish testimonial evidence that might incriminate him in a later criminal proceeding, he "must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'" *Id.* at 316, 96 S.Ct. at 1557 (citations omitted).

■ Although the Court did not specifically address the question of whether prison officials are required to tell an inmate that he has the right to remain silent and that anything he said could be used against him in a subsequent criminal proceeding, it is clear from the Court's opinion that such action is not required by the Fifth or Fourteenth Amendments. Firstly, the Court specifically declined to extend the requirements of *Miranda* and *Mathis,* cases which dealt with what warnings must be given to an individual in custody, to prison disciplinary proceedings. Secondly, the Court held that an inmate is not entitled to be informed that he has a right to counsel at his hearing. Thirdly, the proceedings involved are civil in nature and not criminal. And finally, the Court held that if an inmate was compelled to give testimony which might incriminate him, he was entitled to whatever use immunity is required by the Constitution. The Court's rejection of the holdings in *Palmigiano v. Baxter, supra* and *Clutchette v. Procunier, supra* make it clear that the requirements of *Miranda* need not be extended to prison disciplinary hearings, and this court now holds that they need not

---

attorney present before he may be questioned. 391 U.S. at 3–4, 88 S.Ct. 1503. *See also Clutchette v. Procunier, supra* at 823.

The First Circuit in *Palmigiano* also based its decision in part on the Supreme Court's holding in *Mathis.* See page 967 *supra.*

be. However, the court also holds that if an inmate is compelled to give testimony against himself, said testimony may not be used against him in a subsequent criminal proceeding arising out of the same facts giving rise to the disciplinary hearing.

Accordingly, defendants' Motion for Summary Judgment is granted. An appropriate order dismissing this case will be entered.