Jack Jeffrey McCRACKEN,
Petitioner-Appellant,

v.

Theodore COREY, Superintendent, or any other person in charge of the Fairbanks Correctional Center, Division of Corrections, State of Alaska, Respondent-Appellee.

No. 3503.

Supreme Court of Alaska.

May 30, 1980.

---

Gail Roy Fraties, Joseph M. Moran and A. Lee Petersen, Fraties & Petersen, Anchorage, for petitioner-appellant.

David Mannheimer, Asst. Atty. Gen., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for respondent-appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This is an appeal from a denial of a writ of habeas corpus.

McCracken was arrested and charged with being a felon in possession of a firearm, a violation of both Alaska law[1] and the conditions of his parole.[2] A parole revocation hearing was scheduled prior to his trial on the criminal charges.[3] McCracken applied for a temporary restraining order and preliminary injunction staying the revocation proceeding until after the criminal trial. He claimed that failure to reverse the order of proceedings would force him to stand mute at the hearing in order to preserve his defenses at the criminal trial. The superior court decided that the revocation hearing could proceed, with the proviso that the hearing be closed to all persons other than those "essentially necessary" and that "any testimony given on behalf of the defense shall not be used against the defendant in any way whatsoever . . . ."

McCracken did not testify under oath at the revocation proceeding or present any witnesses. After hearing the testimony of witnesses presented by the state, the board of parole found that McCracken had violated his conditions of release by unlawfully possessing a firearm and remanded him to

---

1. AS 11.55.030.

2. Petitioner categorized himself as a probationer, but in fact he is a parolee. The grant of parole on January 30, 1976 was specifically conditioned on non-possession of any firearm.

3. On the day of his arrest, petitioner-appellant's parole officer filed a two count parole violation charge based upon the criminal activity for which McCracken was arrested. Shortly thereafter, McCracken was indicted by a grand jury for three counts of possession of a weapon by a felon.

custody to continue serving his original sentence.[4] Four months later, the trial of the criminal charges ended in acquittal on all counts.

McCracken's petition for a writ of habeas corpus claiming denial of due process at the revocation hearing was denied. He now appeals.

## I.

■ First, petitioner argues that the lower court erred in holding that the denial of the preliminary injunction is *res judicata* in the habeas corpus proceeding. We agree. Historically, *res judicata* did not operate as a bar to habeas corpus.[5] As the Supreme Court stated in *Fay v. Noia*, 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837, 859–60 (1963):

"It is of the historical essence of habeas corpus that it lies to test proceedings so

fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void. Hence, the familiar principle that res judicata is inapplicable in habeas corpus proceedings . . . is really but an instance of the larger principle that void judgments may be collaterally impeached." [citations omitted]

We also agree with the Supreme Court's statement in *Darr v. Burford*, 339 U.S. 200, 214–15, 70 S.Ct. 587, 596, 94 L.Ed.2d 761, 772–73 (1950):

"All the authorities agree that res judicata does not apply to applications for habeas corpus. The courts must be kept open to guard against injustice through judicial error." [footnote omitted][6]

## II.

Second, petitioner claims that, notwithstanding the grant of immunity bestowed

4. McCracken's original conviction on two counts of shooting with intent to kill and two counts of use of a firearm during an assault, affirmed in part and reversed in part in *McCracken v. State*, 521 P.2d 499 (Alaska 1974), left him with two consecutive twenty year sentences. At the time that his probation was revoked, he had approximately thirty-five years remaining on the original sentence.

5. At common law the denial of an application for habeas corpus was not conclusive upon subsequent applications. *See* Ex parte Partington, 13 M. & W. 679, 153 Eng.Rep. 284 (Ex. 1845); *Burdett v. Abbot*, 14 East 1, 90, 104 Eng.Rep. 501, 535 (K.B. 1811); *King v. Suddis*, 1 East 106, 102 Eng.Rep. 119 (K.B. 1801). The principle was adopted in this country at a very early time. *See, e. g., Ex parte Burford*, 7 U.S. (Cranch) 448, 2 L.Ed. 495 (1806).

6. AS 12.75.230 is inapplicable to the present case. That statute provides in pertinent part:
"No question once finally determined upon a proceeding by habeas corpus shall be re-examined upon another or subsequent proceeding *of the same kind*." [emphasis added]
The emphasized portion of AS 12.75.230 indicates that it was intended to apply only to successive applications for habeas corpus and not, as here, to a judgment followed by application for habeas relief.
In *Taggard v. State*, 500 P.2d 238, 242 (Alaska 1972), we indicated that by enacting AS 12.75.230 the legislature may have intended to depart from the common law rule that *res judicata* is inapplicable to habeas corpus proceedings. In that case, appellant appealed his con-

viction for the sale of narcotics on the ground that the indictment was based solely upon hearsay. The State contended that this court lacked jurisdiction to hear that claim because appellant had already presented this claim in an unsuccessful application for habeas corpus. Appellant appealed the denial of that writ but we dismissed for failure of appellant to file a brief. *Taggard* thus represents the reverse of the instant case—a habeas corpus application followed by an appeal from appellant's conviction.

We resolved *Taggard* by resort to the rule that dismissal of a criminal appeal does not necessarily preclude a second appeal. In so doing we implied that, had we reached the merits of Taggard's habeas corpus appeal, that decision would have been a bar to Taggard's subsequent appeal. In light of our decision today, we now expressly disapprove any such implication. AS 12.75.230 applies only to successive applications for habeas corpus. This conclusion is consistent with *Perry v. State*, 429 P.2d 249, 251 (Alaska 1967), upon which *Taggard* relied. That case *did* involve successive applications for habeas corpus.

It is unnecessary, for the purposes of this opinion, to decide whether AS 12.75.230 was intended to depart from the common law rule as to successive applications for habeas corpus. We reiterate our concern, however, that such a conclusion would raise "serious constitutional questions." *Taggard v. State*, 500 P.2d at 242; *Perry v. State*, 429 P.2d at 251. *See Sanders v. United States*, 373 U.S. 1, 11–12, 83 S.Ct. 1068, 1075, 10 L.Ed.2d 148, 159 (1963).

by the superior court, the scheduling of the revocation hearing prior to the trial on the criminal charges forced him to make an unconstitutional election between his due process right to present a defense at the hearing[7] and his right against compulsory self-incrimination.[8] Although we were not required to address the question then, in *State v. DeVoe*, 560 P.2d 12 (Alaska 1977), Justice Rabinowitz in a concurring opinion wrote:

> "When the probation revocation proceeding is based upon alleged criminal conduct as to which the probationer's innocence or guilt remains to be adjudicated in a criminal proceeding, there is the possibility of dilution of the probationer's privilege against self-incrimination . . . In my view this is a problem of some significance which calls for solution."

*Id.* at 16. We are now presented with an opportunity to address this issue.

■ It is clear that the parolee is entitled to certain due process rights at a parole revocation hearing, including the "opportunity to be heard in person and to present witnesses and documentary evidence." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972); *See also Gagnon v. Scarpelli*, 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 664 (1973) (probation revocation hearing); *McGinnis v. Stevens*, 543 P.2d 1221, 1236 (Alaska 1975) (prison disciplinary hearing).[9] These due process requirements are designed to insure an accurate fact-finding process as well as the informed use of discretion by the parole board, *Gagnon v. Scarpelli*, 411 U.S. at 785, 93 S.Ct. at 1761, 36 L.Ed.2d at 663, for it would serve neither the interest of the state nor that of the parolee to revoke conditional liberty on the basis of erroneous information.

It is also clear that permitting a parolee's testimony at a revocation hearing to be used against him in a subsequent criminal trial for the very conduct which forms the basis of revocation is potentially incriminating. In *Scott v. State*, 519 P.2d 774, 786 (Alaska 1974), we reaffirmed that "[t]he fundamental right not to incriminate one's self . . . 'extends not only to answers that would in themselves support a conviction but also to those which might furnish a link in the chain of evidence leading to a conviction.'" [footnote omitted] *quoting from McConkey v. State*, 504 P.2d 823, 826 (Alaska 1972).

The United States Supreme Court has held that an individual has a constitutional right to remain silent in any "proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973), *Baxter v. Palmigiano*, 425 U.S. 308, 316, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810, 820 (1976). Petitioner maintains that in exercising his right to remain silent "he was penalized by virtue of the loss of his due process rights" to put on a defense at the revocation hearing. The United States Supreme Court has repeatedly condemned the practice of imposing a substantial penalty for the exercise of the privilege against self-incrimination. The most recent decision in this area is *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). In that case, an officer of a political party was told that if he refused to testify before a grand jury or waive immunity from the later use of his testimony under the New York Election Law he could be removed from his party office and prohibited from holding office for five years. The Court held that the Fifth Amendment prohibits a state from compelling testimony "by threatening to in-

---

7. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Alaska Const. art. 1, § 7.

8. The right to refrain from compulsory self-incrimination is guaranteed by the fifth amendment to the United States Constitution and art. I, § 9, of the Alaska Constitution.

9. In *McGinnis*, we held that the Alaska Constitution affords an inmate greater due process protections at a prison disciplinary hearing than the United States Constitution. 543 P.2d at 1236.

flict potent sanctions unless the constitutional privilege is surrendered . . . ." *Id.* at 805, 97 S.Ct. at 2135, 53 L.Ed.2d at 7.

*Lefkowitz* affirmed the teaching of a long line of cases that the state cannot condition the exercise of the privilege against compulsory self-incrimination upon the forfeiture of another constitutionally protected right.[10] In all of these cases, the "penalty" imposed for the assertion of the privilege against self-incrimination was the automatic loss of a tangible benefit, such as a job or a contract. The question here is whether forcing the defendant at a revocation hearing to choose between producing evidence which may incriminate him at later trial or remaining silent and foregoing a valuable defense, constitutes a penalty for the exercise of the privilege against self-incrimination.

In another line of cases, the Supreme Court has addressed the problem of whether the surrender of one constitutional right for the exercise of another imposes an impermissible penalty. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court held that when a defendant testifies at a suppression hearing on the issue of standing to object to evidence, his testimony may not thereafter be admitted against him on the issue of guilt. Reasoning that this placed the defendant in a position where he "was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or . . . to waive his Fifth Amendment privilege against self-incrimination" the Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* at 394, 88 S.Ct. at 976, 19 L.Ed.2d at 1259.

A subsequent Supreme Court decision, *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), has cast doubt on the continued validity of this language in *Simons*.[11] That case involved a challenge to Ohio's procedure of having a single trial on the issues of guilt and punishment. In rejecting the defendant's contention that this procedure presented an intolerable tension between his due process right to address his sentencer and his privilege against self-incrimination, the Court noted that the choice was analogous to many other difficult choices which criminal defendants and their attorneys routinely face. "The threshold question," the Court concluded, "is whether compelling the election (between the exercise of constitutional rights) impairs to an appreciable extent any of the policies behind the rights involved."[12] *Id.* at 212, 91 S.Ct. at 1470, 28 L.Ed.2d at 729. One year later in *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the Court held that a statute requiring the defendant to testify, if at all, before any other defense witnesses could testify unconstitutionally infringed on the right to remain silent "by making its

---

10. *See Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (police officer fired for refusal to waive immunity and privilege against self-incrimination before grand jury investigating bribery and corruption within the police force); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (Sanitation Dept. employees fired for refusal to testify before grand jury and before administrative proceedings investigating corruption); *Garrity v. New Jersey*, 385 U.S. 493, 87 L.Ed. 616, 17 L.Ed.2d 562 (1967) (police officers threatened with dismissal for failure to testify at hearing investigating ticket fixing convicted on testimony); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (attorney disbarred for failure to furnish incriminating records).

11. The court qualified *Simmons* accordingly: "While we have no occasion to question the soundness of the result in *Simmons* and do not do so, to the extent that its rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question . . . ." *Id.* at 212, 91 S.Ct. at 1470, 28 L.Ed.2d at 729.

12. The defendant's choice in *McGautha* may be distinguishable from the defendant's decision of whether to testify at a revocation hearing because of the fewer procedural protections and lower burden of proof afforded at a revocation proceeding. *See* Note, Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations, 74 Mich.L.Rev. 525, 546 (1976).

assertion costly." *Id.* at 611, 92 S.Ct. at 1894, 32 L.Ed.2d at 363.

The Supreme Court's most recent pronouncement on the issue of conflicting constitutional rights is in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In the context of prison disciplinary proceedings, the Court implicitly found that drawing adverse inferences against an inmate for failure to testify does not impose an impermissible penalty on the exercise of one's Fifth Amendment right to remain silent.[13] The Court held, in dictum, however, that use immunity would be required should criminal proceedings later be instituted against the inmate:

"Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'"

*Id.* at 316, 96 S.Ct. at 1557, 47 L.Ed.2d at 820, *quoting from Lefkowitz v. Turley*, 414 U.S. 70, 85, 94 S.Ct. 316, 326, 38 L.Ed.2d 274, 286 (1973).

It is apparent from analysis of the above cases that there is no clear standard for determining what choices constitute a penalty for the assertion of a constitutional right as opposed to a mere tactical decision. For this reason most state courts which have faced the question of whether revocation of probation prior to the criminal trial

on the same charges violates the probationer or parolee's Fifth Amendment rights have declined to decide the constitutional issue and have instead based their decision on their supervisory powers.[14] The California supreme court in *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975), facing the identical question of whether revocation of probation on the basis of a criminal charge, prior to the trial on that charge, violated the defendant's right against self-incrimination, stated:

"Whether or not it actually abridged defendant's constitutional rights, the choice forced upon him at his revocation hearing was unnecessarily inconsistent with constitutional values.

[R]egardless of whether we are constitutionally compelled to do so, in the interests of justice and in the exercise of our inherent supervisory powers over the courts of this state, we should alleviate the hard testimonial choice facing probationers subject to the loss of probation for conduct for which they may also be liable to criminal prosecution."

*Id.* 120 Cal.Rptr. at 390, 533 P.2d at 1030.

The *Coleman* court concluded that the practice of holding a revocation proceeding based upon commission of another crime prior to the disposition of that charge adversely affects at least two of "the many and varied policies underlying the privilege against self-incrimination." *Id.*, 120 Cal. Rptr. at 392, 533 P.2d at 1032. First, permitting the estate to conduct a revocation hearing prior to a criminal trial offends the notions underlying the privilege against

---

**13.** Justice Brennan, joined by Justice Marshall, dissenting, wrote:

"The compulsion upon Palmigiano is as obvious as the compulsion upon the individuals in *Garrity-Lefkowitz*. He was told that criminal charges might be brought against him . He was also told that anything he said in the disciplinary hearing could be used against him in a criminal proceeding. Thus, the possibility of self-incrimination was just as real and the threat of a penalty just as coercive." [footnote omitted.]
425 U.S. at 333, 96 S.Ct. at 1565, 47 L.Ed.2d at 830.

The *Baxter* decision has received a great deal of criticism. *See* Note, Prisoner Rights in a Disciplinary Proceeding, 29 Baylor L.Rev. 620

(1977); Note, Constitutional Law—Prison Disciplinary Proceedings and the Fifth Amendment Privilege Against Self-Incrimination, 55 N.C.L.Rev. 254 (1977); Comment, Baxter v. Palmigiano: A Crippled Fifth Amendment Privilege for Inmates in Prison Disciplinary Proceedings, 1976 Utah L.Rev. (1976).

**14.** *See People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975); *People v. Rocha*, 86 Mich.App. 497, 272 N.W.2d 699 (1978) (basing their holding on public policy rather than constitutional grounds); *State v. DeLomba*, 117 R.I. 673, 370 A.2d 1273 (1977); *State v. Evans*, 77 Wis.2d 225, 252 N.W.2d 664 (Wis.1977).

self-incrimination by disrupting the maintenance of a "fair state-individual balance" at the criminal trial, where the burden of proving the guilt of the defendant must be shouldered entirely by the state.[15] *Id., quoting Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678, 681 (1964). There is the danger that the prosecution will use the revocation hearing, with its lower standard of proof, to gain evidence for the criminal trial, thus slighting its investigatory responsibilities.[16] Second, forcing a parolee or probationer to choose between his right to remain silent and his opportunity to be heard, while possibly not rising to the level of "compulsion" prohibited by the Fifth Amendment, poses an unfair dilemma which "runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination." *Id.,* 120 Cal.Rptr. at 394, 533 P.2d at 1034. The dilemma is enhanced by the Supreme Court decision in *Baxter,* because silence may now be more costly at a revocation proceeding than at a criminal trial.[17]

Some authorities conclude that this dilemma can only be resolved by requiring the state to postpone the revocation hearing until after the disposition of the criminal charge.[18] Most courts faced with the problem have concluded that it can be sufficiently resolved by granting use immunity at the later trial.[19] In *Melson v. Sard,* 402

---

**15.** In *Williams v. Florida,* 399 U.S. 78, 113–14, 90 S.Ct. 1893, 1912, 26 L.Ed.2d 446, 484 (1970) (concurring and dissenting opinion), Justice Black observed:

"A criminal trial is in part a search for truth. But it is also a system designed to protect 'freedom' by insuring that no one is criminally punished unless the State has first succeeded in the admittedly difficult task of convincing a jury that the defendant is guilty. That task is made more difficult by the Bill of Rights, and the Fifth Amendment may be one of the most difficult of the barriers to surmount. The Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in 'efficiency' that resulted."

**16.** In *Scott v. State,* 519 P.2d 774 (Alaska 1974), we held that requiring a defendant to comply with a pre-trial discovery order to furnish the names and addresses of potential defense witnesses and certain information relating to the use of an alibi defense was violative of the accused's rights against compulsory self-incrimination under the Alaska Constitution. In so holding, we note that "[o]ur form of government has imposed an extraordinary burden of proof upon the state in criminal litigations." *Id.* at 784.

**17.** *See DeVita v. Sills,* 422 F.2d 1172 (3d Cir. 1970), where a defendant sought to postpone a state disbarment inquiry until after the disposition of criminal proceedings arising from the same alleged misconduct. The court rejected the defendant's argument that this violated his right against self-incrimination on the grounds that no inference of guilt or wrong-doing could be drawn from the attorney's silence. In light of the Supreme Court's holding in *Baxter* that adverse inferences may be drawn from an inmate's silence at a prison disciplinary hearing, the reasoning of *DeVita* is of dubious applica-

bility in the present context. It is not certain whether *Baxter* applies to revocation hearings and a distinction could be drawn since prison disciplinary hearings, at least under the federal constitution, do not require the same minimum due process rights of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See McGinnis v. Stevens,* 543 P.2d 1221 (Alaska 1975). The distinction may be meaningless, however, since it could be said that the absence of due process rights at the prison hearing makes the defendant's testimony more important than at a revocation hearing. *See People v. Rocha,* 86 Mich.App. 497, 272 N.W.2d 699, 706 (1978).

**18.** See Chief Judge Coffin's dissent in *Flint v. Mullen,* 499 F.2d 100, 105 (1st Cir. 1974). The American Bar Association Advisory Committee on Sentencing and Review recommends that "[a] revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge." ABA Advisory Comm. on Sentencing and Review, Standards Relating to Probation, § 5.3 at 62 (Approved Draft 1970). The Model Penal Code would go even further and require a conviction before parole or probation may be revoked for that crime. Model Penal Code § 301.3 (Proposed Official Draft 1962).

**19.** *Melson v. Sard,* 402 F.2d 653, 655 (D.C.Cir. 1968); *Tinch v. Henderson,* 430 F.Supp. 964, 969 (M.D.Tenn.1977); *People v. Coleman,* 13 Cal.3d 867, 120 Cal.Rptr. 384, 402, 533 P.2d 1024, 1042 (Cal.1975); *People v. Rocha,* 86 Mich.App. 497, 272 N.W.2d 699, 706 (1978); *Avant v. Clifford,* 67 N.J. 496, 341 A.2d 629, 653–57 (1975) (requiring use immunity in the context of a prison disciplinary hearing); *State*

F.2d 653 (D.C.Cir.1968), the court viewed petitioner's "dilemma of whether to testify at the revocation hearing and seek his release, but risk uttering incriminatory statements that could be used against him at his criminal trial," *Id.* at 654, as posing an issue of competing constitutional values:

"We think the solution lies in establishing certain safeguards by which the parolee's dilemma is lessened at the revocation hearing. We feel that the parolee's most significant handicap—the fear of self-incrimination—can readily be eliminated. . . . Accordingly, we hold that any self-incriminatory statements made in a parole revocation hearing shall not be used affirmatively against the parolee in any subsequent criminal proceeding." [footnotes omitted]

*Id.* at 655.

Similarly, the *Coleman* court fashioned an exclusionary rule whereby "upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges . . ." 120 Cal.Rptr. at 402, 533 P.2d at 1042. In *State v. DeLomba*, 117 R.I. 673, 370 A.2d 1273 (1977), the Rhode Island supreme court, relying in part on *Coleman*, adopted the requirement of either a grant of use and derivative use immunity for testimony given at a probation revocation hearing, or

postponement of the revocation proceeding until after the criminal trial, on the reasoning that "the unfairness of the current practice, even if not so severe as to rise to the level of a constitutional deprivation, is nevertheless so real and substantial that it calls for action by us on public policy grounds and in furtherance of our responsibility to assure a sound and enlightened administration of justice." *Id.* at 1275.

It is true, as petitioner asserts, that, despite a grant of use immunity, he may necessarily have to divulge his defense strategy at a revocation hearing held prior to the criminal trial. For this reason we agree with the California supreme court that "the most desirable method of handling the problems of concurrent criminal and probation revocation proceedings may well be for revocation proceedings not even to be initiated until after disposition of the related criminal proceedings." 120 Cal. Rptr. at 406, 533 P.2d at 1046.[20] The state's interest in initiating prompt revocation proceedings upon the occurrence of a criminal offense cannot be ignored, however. We think use and derivative use immunity can adequately protect the parolee at a revocation hearing from infringement of his constitutional rights without sacrifice to the state's interest.

▆ We are persuaded by the approach adopted in *Coleman* and *DeLomba*. In the interests of fairness, a parolee should not be forced to choose between remaining mute at a revocation proceeding, thereby surrendering his right to present a defense, or

---

v. *DeLomba*, 117 R.I. 673, 370 A.2d 1273, 1276 (1977); *State v. Evans*, 77 Wis.2d 225, 252 N.W.2d 664, 668–69 (1977). *See* Note, Revocation of Conditional Liberty, *supra*, note 15 at 553–54. *Contra, Ryan v. Montana*, 580 F.2d 988, 994 (9th Cir. 1978) (finding that immunity was not constitutionally required and that the courts had no supervisory power to grant immunity under Montana law); *Roberts v. Taylor*, 540 F.2d 540, 542–43 (1st Cir. 1976), *cert. denied*, 429 U.S. 1076, 97 S.Ct. 819, 50 L.Ed.2d 796 (1977); *Flint v. Mullen*, 499 F.2d 100, 102 (1st Cir. 1974), concluding that there was no "compulsion" involved in this dilemma and thus the prosecution need not hold the criminal trial first or grant use immunity for testimony given at the revocation hearing; *People v. Carr*, 185 Colo. 293, 524 P.2d 301 (1974); *State v.*

*Randall*, 27 Or.App. 869, 557 P.2d 1386, 1389–90 (1976).

**20.** The state can, of course, require bail or detain the individual pending disposition of the criminal charge. The American Bar Association, in its Standards Relating to Probation, *supra*, recommends that "upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge." ABA Advisory Comm. on Sentencing and Review, Standards Relating to Probation, § 5.3 at 62–63 (Approved Draft 1970).

testifying at the revocation hearing and incurring the possibility of incriminating himself. In the exercise of our inherent supervisory powers over the administration of justice by courts of this state,[21] we hold that where a parolee is faced with both revocation and a criminal trial based upon the same conduct, upon timely objection any evidence [22] or testimony presented by the parolee at a revocation hearing is inadmissible by the state in subsequent criminal proceedings. This exclusionary rule applies equally to the fruits of the parolee's prior revocation hearing,[23] "in order to remove completely any illegitimate incentive to schedule revocation hearings in advance of trial." *People v. Coleman*, 120 Cal.Rptr. at 403, 533 P.2d at 1043. We also hold that the parolee must be advised prior to revocation proceedings that any evidence or testimony offered by him at the revocation proceedings may not be admitted against him at a subsequent trial on the underlying offense.

In the present case, petitioner was informed by the superior court that he would be given immunity at subsequent criminal proceedings for any testimony offered at the revocation hearing. Despite this grant of immunity, McCracken's attorney explained, through affidavit, that he did not advise his client to present a defense at the

revocation hearing because he "anticipated that the District Attorney prosecuting Mr. McCracken would have access to all information which may be presented and would have utilized all of such information in preparing for trial of the felony case." Thus, McCracken's reluctance to present a defense was primarily based on his assumption that the court's order did not extend to the fruits of any testimony he presented at the revocation hearing.

The Supreme Court has expressed concern that a witness who has been granted immunity "not be required to answer a question if there is some rational basis for believing that it will incriminate him . . . ." *Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 574, 592 (1975) (White, J., concurring). And in *Stevens v. Marks*, 383 U.S. 234, 246, 86 S.Ct. 788, 794, 15 L.Ed.2d 724, 732–33 (1966), the Court stated:

"A witness has, we think, a constitutional right to stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity, as broad in scope as the privilege it replaces, is available and applicable to him." [footnote omitted]

*See also Baxter v. Palmigiano*, 425 U.S. 308, 335 n.8, 96 S.Ct. 1551, 1566 n.8, 47 L.Ed.2d

---

**21.** Alaska Const. art IV, §§ 1, 15. *See also McCracken v. Davis*, 560 P.2d 771, 774 (Alaska 1977).

**22.** This rule applies not only to the defendant's own testimony but to the presentation of other evidence, such as witnesses and documents, which is "testimonial," "incriminating" and "compelled." *Scott v. State*, 519 P.2d 774, 785 (Alaska 1974). *See* Note, Revocation of Constitutional Liberty, *supra* at 539, 547–49. In *Scott*, we acknowledged that testimonial evidence encompasses more than an individual's own testimony, and may properly include statements or documents which are "communicative" in nature. *Id.* at 786. *California v. Byers*, 402 U.S. 424, 432–33, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9, 20 (1971); *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1831–32, 16 L.Ed.2d 908, 916 (1966). By introducing evidentiary items or witnesses at a revocation hearing, "the defendant implicitly communicates that he believes such evidence is relevant to the matter being adjudicated." Note, Revocation of Conditional Liberty, *supra* note 15 at

549. There is little question that the presentation of evidence at a revocation hearing may incriminate the defendant by providing the state with valuable information and leads. Such evidence is "compelled" in the sense that by failing to either testify or present any evidence on his own behalf, the defendant is virtually assuring the revocation of his parole.

**23.** We think that at a subsequent criminal trial relating to the same conduct as the revocation proceeding, the state must affirmatively show that it derived its evidence from a source independent of the testimony or evidence presented by the defendant at the revocation hearing. "This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212, 226 (1972).

810, 832 n.8 (1976) (Brennan, J., joined by Marshall, J., concurring & dissenting).

■ Although the superior court's order clearly states that "any *testimony* given on behalf of the defense" [emphasis added] could not be used against the defendant "in anyway. whatsoever," we do not think that this clearly demonstrated to McCracken that the fruits of any evidence or testimony presented by him at the revocation hearing could not be used at a later trial. Had McCracken had full knowledge and awareness of the immunity required by this opinion, we cannot help but think that he would have conducted a far more adequate defense at the revocation hearing. Since we find that petitioner had a rational basis for being unsure of the degree of protection the court's grant of immunity would actually afford him at his subsequent criminal trial, we reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

RABINOWITZ, Chief Justice, concurring.

In *State v. DeVoe,* 560 P.2d 12, 15–17 (Alaska 1977), I first addressed the question of a defendant's constitutional rights against self-incrimination in the situation where the state seeks both probation or parole revocation and a separate criminal conviction for the same conduct. I agree with the majority that the competing constitutional values at issue here call for adoption of an exclusionary rule, under our supervisory powers, rendering any self-incriminating statements made in a parole or probation revocation hearing as well as their fruits inadmissible in any subsequent criminal proceeding. However, this does not, to my mind, completely resolve the difficult dilemma that the probationer or parolee still faces, even with a grant of such immunity.

The probationer or parolee when confronted with a revocation hearing prior to a criminal trial still must weigh several factors in deciding whether to testify. Not to testify may mean that parole or probation will be revoked because no response had been made to the state's evidence. The commentary to the ABA standards on probation point out the greater difficulty in defending such an action:

> The relative informality of a probation revocation proceeding, as compared to the trial of an original criminal charge, underlines the danger. Relaxation of rules of admissibility of evidence, the absence of a jury, a lesser burden of proof—factors such as these can lead to an abuse of the proceedings by basing revocation upon a new criminal charge when the offense could not be proved in an ordinary criminal trial.

ABA Standards relating to Probation, § 5.3, at 63 (Approved draft 1970). To testify and put forth a full defense, if successful, may still be a hollow victory. For while the parolee or probationer may be successful in persuading the parole board or the court that parole or probation should not be revoked, the prosecution has most likely been given a fairly comprehensive presentation of the parolee or probationer's defense. At the criminal trial, the prosecution will thus be better prepared because the revocation proceeding was held prior to the trial on the underlying criminal conduct. Part of the rationale for the constitutional right against self-incrimination is that the state must bear the entire burden of proof of guilt in a criminal case and the state cannot require the defendant to contribute to that proof through his own testimony. The initial view of the accused's defense at a revocation hearing may inappropriately lessen the state's burden of proof at trial at the expense of the defendant's right against self-incrimination. Thus, I agree with the position of the California Supreme Court in *People v. Coleman,* 13 Cal.3d 867, 120 Cal. Rptr. 384, 406, 533 P.2d 1024, 1046 (Cal. 1975), that the preferable solution in these circumstances is to postpone the holding of the revocation proceeding until after the outcome of the criminal prosecution. As I noted in my concurrence in *DeVoe* :

> Consideration of such factors led the American Bar Association to recommend that:

A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge.

This position has been adopted by the American Law Institute and, at least arguably, by several state legislatures.

560 P.2d at 16 (footnotes omitted).

The majority opinion states that "the state's interest in initiating prompt revocation proceedings upon the occurrence of a criminal offense cannot be ignored." The ABA Standard suggests if there is concern that the parolee or probationer will not appear or will commit further criminal activity, the court should detain the defendant without bail until the trial. In Alaska, this is not possible since there is a constitutional right to bail when criminal charges are pending under Alaska Constitution, art. I, sec. 11. *Martin v. State*, 517 P.2d 1389 (Alaska 1974).[1] Although bail cannot be denied, if there is evidence suggesting nonappearance or that the parolee or probationer poses a danger to the community, the court can take these factors into consideration in fixing the amount of bail or terms of a conditional release.[2] *Id.* at 1397. I believe that this option adequately protects

the state's interests without imposing undue burdens on the parolee or probationer's constitutional rights.

Further, in *McGinnis v. Stevens*, 543 P.2d 1221, 1232–33 (Alaska 1975), we noted in the context of prison disciplinary hearings that:

The Division of Corrections' regulations pertaining to major infractions involving conduct constituting felonies provide for referral to the local district attorney, together with a request that he advise the institution within five working days whether prosecution will be undertaken. If the district attorney informs the institution that prosecution will be undertaken and the case goes to trial, there will be no further disciplinary action taken by the institution against the offender for the particular conduct.

I am of the view that either the parole board, Department of Health and Social Services, or the legislature should consider adopting a similar regulation or statute providing that the parole or probation officer seeking revocation based on conduct constituting a crime must refer the matter to the district attorney to consider the bringing of criminal charges. If the district attorney, within stated time constraints, informs the parole or probation officer that he will not seek criminal charges, then the officer can proceed with the revocation proceeding. If the district attorney does plan on bringing criminal charges, the parole or probation officer must suspend any revocation pro-

---

1. In *Martin v. State*, 517 P.2d 1389, 1398 (Alaska 1974), the court concluded that the right to bail did not extend to situations in which there is not a criminal proceeding but only a probation revocation proceeding. However, the court noted that, even in those cases, denial of bail is ill advised:

   While we hold that appellant Max Ray Martin was neither entitled to bail under the Alaska Constitution or the Alaska Bail Act, we suggest bail should be withheld pending revocation proceedings only in unusual cases. Trial judges have wide latitude in imposing suitable conditions for prehearing release, other than the denial of bail. The denial of bail may constitute a needless disruption of the probation process negating the program's objectives of rehabilitation and

eventual integration into society. Furthermore, the recent expansion in the area of probationer's rights by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), suggests the granting of bail.

2. In *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 406, 533 P.2d 1024, 1046 (1975) (citations omitted), the court similarly noted:

   Where pretrial custody is required of one accused of crime, the state has available to it procedures for requiring bail or otherwise restraining conduct which would render unnecessary immediate resort to the machinery of probation revocation in those instances where the accused happens to be a probationer.

ceedings until after the outcome of the criminal prosecution.

I believe that such a procedure will adequately protect the parolee or probationer's constitutional rights against self-incrimination while offering the state adequate measures to deal with criminal conduct committed by parolees or probationers.

BURKE and MATTHEWS, JJ., dissent on the basis that the superior court's order of immunity unambiguously and completely protected petitioner's privilege against self-incrimination.